# UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| ALISHA ANN MURPHY,<br><br>               Petitioner,<br><br>v.<br><br>WARDEN KIRKMAN,<br><br>               Respondent. | Case No. 4:14-cv-00317-REB<br>(lead case)<br><br>**MEMORANDUM DECISION AND ORDER** |
| ALISHA ANN MURPHY,<br><br>               Petitioner,<br><br>v.<br><br>AMANDA GENTRY,<br><br>               Respondent. | Case No. 4:16-cv-00167-REB<br>(consolidated case) |

Pending before the Court in these consolidated cases is a Petition for Writ of Habeas Corpus filed by Idaho state prisoner Alisha Ann Murphy ("Petitioner" or "Murphy"), challenging Petitioner's Twin Falls County conviction of first-degree murder. (Petition, Dkt. 1 (consol. case).) Respondents have filed a Motion for Summary Dismissal, arguing that the Petition is barred by the one-year statute of limitations. (Dkt. 21 (lead case).) The Motion is now ripe for adjudication.

The Court takes judicial notice of the records from Petitioner's state court proceedings, which have been lodged by Respondent. (Dkt. 17.) *See* Fed. R. Evid. 201; *Dawson v Mahoney*, 451 F.3d 550, 551 n.1 (9th Cir. 2006). The Court has also reviewed Petitioner's medical records lodged on October 28, 2015 (Dkt. 9), as well as the attachments to the parties' submissions in this case.

The parties have consented to the jurisdiction of a United States Magistrate Judge to conduct all proceedings in this case in accordance with 28 U.S.C. § 636(c). (Dkt. 22.) Having carefully reviewed the record, including the state court record, the Court finds that the parties have adequately presented the facts and legal arguments in the briefs and record and that oral argument is unnecessary. *See* D. Idaho L. Civ. R. 7.1(d). Accordingly, the Court enters the following Order granting the Motion and dismissing this case with prejudice as untimely.

## BACKGROUND

The facts underlying Petitioner's conviction have been explained by the Idaho Supreme Court as follows:

> In the underlying criminal case, Murphy was convicted of first degree murder. The state's evidence indicated that on the night of December 18, 1995, Murphy entered the room of her children and began choking her seven-year-old son, Jimmy, with a belt. James, her husband, intervened and they began to argue. The argument continued in the kitchen, and Murphy knocked her husband unconscious with a cast-iron frying pan. Murphy then obtained a gun from a bedroom and returned to the kitchen. According to Jimmy's trial testimony, Jimmy observed his mother kneeling over his father's motionless body and placing a gun into James' hand. She appeared to be pointing the gun in the direction of his father's

face. Jimmy ran back to his room and then he and his four-year-old sister, Olive, heard a loud noise. Murphy gathered the children and they walked through the kitchen where James' body was lying on the floor, exited the house and drove away.

It is undisputed that Murphy and her husband were involved in a turbulent relationship marked by excessive alcohol use and physical violence. Both were extremely intoxicated on the night in question. Murphy always maintained her innocence, claiming her husband committed suicide. According to Murphy, as the fight escalated she grabbed her two children and fled the house as she had done so many times before. This version of the events was corroborated by Jimmy's initial statements to the police that he saw his father waving to them from the doorway of the house as they drove away. Murphy also insisted that after she left, her husband recorded a telephone message on the answering machine of Norma Jo Robinson, Murphy's mother, proving that he was still alive. Finally, the autopsy report prepared at the time by pathologist, Dr. Kerry Patterson, listed the manner of death as indeterminate.

Several years later, Jimmy changed his story. Jimmy said that his mother had threatened to hurt him if he did not tell the police about seeing his father waving at the door. With this additional evidence, Murphy was charged with the murder of her husband. In December 1999, before the grand jury, the state's expert, Dr. Patterson, testified consistent with his autopsy report, that the manner of death was indeterminate.

Murphy's trial counsel advised her to use a "battered woman syndrome" defense, which she rejected because she refused to admit to committing the fatal act. Murphy also rejected her counsel's recommendation to accept a reduced voluntary manslaughter charge offered by the state. Then, on the eve of the trial—in September of 2000, more than four years after James' death—Dr. Patterson, changed his opinion about the manner of death from "indeterminate" to "homicide" after examining for the first time the gun involved and the gunshot residue report. Dr. Patterson's position at trial regarding the manner of death was contrary to his autopsy

> report rendered three days after the death of James and
> contrary to his testimony before the grand jury. Defense
> counsel moved for a mistrial but did not request a
> continuance based on this change of position. At the
> conclusion of the trial, the jury returned a verdict of guilty.

(State's Lodging F-8 at 1-3 (footnote omitted).) Petitioner was sentenced to life

imprisonment without the possibility of parole. On January 8, 2003, the Idaho Court of

Appeals affirmed Petitioner's conviction and sentence. (State's Lodging B-4.) The Idaho

Supreme Court denied review and issued its remittitur on March 19, 2003. (State's

Lodging B-7, B-8.)

Petitioner filed her initial petition for state post-conviction relief on March 8,

2004. (Dkt. C-1 at 4-8.) *See Munson v. State*, 917 P.2d 796, 800 (Idaho 1996) (mailbox

rule). The Idaho district court summarily denied the petition. (State's Lodging C-1 at

216-32.) The Idaho Court of Appeals affirmed as to most of Petitioner's claims, but

reversed and remanded with respect to her claim that trial counsel rendered ineffective

assistance by failing to retain a pathologist, as well as a number of claims regarding

which the district court had not given proper notice of the grounds for dismissal. (State's

Lodging D-8.)

The trial court held further proceedings, including an evidentiary hearing, and

once again dismissed Petitioner's initial post-conviction petition. (State's Lodging E-1 at

147-68.) The Idaho Court of Appeals affirmed the trial court following remand. (State's

Lodging F-4.) The Idaho Supreme Court denied review. (State's Lodging F-8.) The

remittitur was issued on August 10, 2009. (State's Lodging F-9.)

On July 10, 2008, while Petitioner's appeal following remand was still pending, Petitioner filed a successive post-conviction petition in the Idaho district court. (State's Lodging G-1 at 9-15.) That court denied Petitioner's motion for counsel and dismissed the successive petition. (*Id*. at 110-26.) The court also denied Petitioner's motion for reconsideration, concluding that Petitioner had not satisfied the "sufficient reason" requirement for filing a successive petition. (*Id*. at 171-80.) *See* Idaho Code § 19-4908 ("All grounds for relief available to an applicant under this act must be raised in his original . . . application. Any ground finally adjudicated or not so raised, or knowingly, voluntarily and intelligently waived . . . may not be the basis for a subsequent application, unless the court finds a ground for relief asserted which for sufficient reason was not asserted or was inadequately raised in the original . . . application.").

On appeal, the Idaho Court of Appeals affirmed the dismissal of most of the claims in the successive petition, but reversed as to Petitioner's claim that trial counsel was ineffective in failing to obtain certain telephone records. (State's Lodging H-13.) With respect to this claim, the court of appeals held that Petitioner had presented "at least the possibility of a valid claim warranting appointment of counsel." (*Id*. at 16.)

The Idaho Supreme Court granted review of the Idaho Court of Appeals' decision, took additional briefing, and reinstated the dismissal of all of Petitioner's claims. (State's Lodging H-14 through H-19.) The state supreme court disagreed with the court of appeals' decision that the successive petition stated at least the possibility of a valid claim of ineffective assistance regarding the telephone records. The court held that ineffective

assistance of initial post-conviction review counsel is not a "sufficient reason" for a successive petition, overruling *Palmer v. Dermitt*, 635 P.2d 955 (Idaho 1981). (State's Lodging H-19 at 2.) Therefore, Petitioner's claims were subject to the successive petitions bar of Idaho Code § 19-4908. The Idaho Supreme Court later denied Petitioner's request for rehearing, and the remittitur issued on July 1, 2014. (State's Lodging H-22, H-23.)

In August 2014, Petitioner filed, in this Court, an application to proceed in forma pauperis, as well as a motion for appointment of counsel "to assist this petitioner in her federal habeas corpus." (Dkt. 3 (lead case) (capitalization omitted).) Petitioner stated that she is visually impaired, having been diagnosed with pattern retinal dystrophy, and has difficulty reading and writing. Petitioner did not file a habeas petition at that time.

The Clerk of Court opened a habeas action and conditionally filed Petitioner's in forma pauperis application and motion for counsel. The Clerk issued an Order of Conditional Filing, which stated in relevant part:

> NOW THEREFORE IT IS HEREBY ORDERED that your request that your case be filed and issued a case number is conditionally granted. Please be advised that you cannot proceed with your case until the Court issues an order making a final determination on your in forma pauperis application. If you are a prisoner, you must also wait until the Court has authorized you to proceed with your case in an initial review order, even if you have paid the filing fee.

(Dkt. 4.)

The Court addressed Petitioner's preliminary filings in an Order dated November 3, 2014. (Dkt. 6.) The Court concluded that Petitioner had "provided insufficient factual

information about her condition and abilities" for purposes of her request for counsel

because she relied only on "an old medical record from . . . 2010, which does not provide

a layperson with adequate information to discern Petitioner's limitations on her ability to

read." (*Id.* at 1.) The Court also lacked information on the prison's access-to-courts

delivery system with respect to visually-impaired inmates. Therefore, the Court allowed

Petitioner to "submit a current medical record or report that clarifies the status of her

condition." (*Id.*) The motion for appointment of counsel was deemed moot pending

Petitioner's submission of such supplemental materials. Petitioner's in forma pauperis

application was granted.

In the November 2014 Order, the Court expressly warned Petitioner that the

statute of limitations for Petitioner's federal habeas petition was continuing to run and

that her in forma pauperis application and motion for appointment of counsel did not

affect the running of that statute:

> Petitioner is informed that her one-year federal statute
> of limitations remains running, and has not been tolled as a
> result of her request for counsel. *See Isley v. Arizona*
> *Department of Corrections,* 383 F.3d 1054, 1055 (9th Cir.
> 2004); *Woodford v. Garceau*, 538 U.S. 202, 210 (2003) (a
> case does not become "pending" until an actual application
> for habeas corpus relief is filed in federal court). *It would be*
> *wise for Petitioner to seek help from the prison paralegal to*
> *prepare a simple petition on the prison's federal habeas*
> *corpus form* that includes every federal claim that she
> exhausted or attempted to exhaust in state court *and file it as*
> *soon as possible*. Such a petition can be amended at a later
> date, but later claims must relate back to the claims in the
> original petition if the later claims are added after the original
> statute of limitations period has expired. *Ha Van Nguyen v.*
> *Curry*, 736 F.3d 1287, 1296 (9th Cir. 2013).

(*Id.* at 2 (emphasis added).) As seen by this statement, Petitioner was specifically notified that, to safeguard the timeliness of her eventual petition, she should submit an actual petition "as soon as possible." The Court gave this warning to Petitioner despite the fact that it was not obligated to do so. *See Pliler v. Ford*, 542 U.S. 225, 231-34 (2004).

A copy of the Court's November 3, 2014 Order was sent to L. LaMont Anderson, Deputy Attorney General and counsel for Respondents, "for the purpose of notifying the prison of Petitioner's need for access-to-the-courts help in preparing a petition." (*Id.*)

It does not appear that IDOC took any action as a result of receiving notice of the Petitioner's situation. Petitioner attempted to obtain a copy of her medical records to submit to the Court for purposes of renewing her request for appointment of counsel. Petitioner submitted written requests to prison staff for the information, but was subjected to "a confusing and tedious process" to obtain that information. (Dkt. 8 at 1.) For example, prison staff replied to one of Petitioner's requests in writing that was "so light as to be unreadable," but the reply "was sent to [Petitioner]—who had already mentioned she had a visual impairment—anyway." (*Id.*) Moreover, prison staff informed Petitioner that they would not release medical information without "a signed consent from the lawyer and [they would] release records to the lawyers only." (*Id.*) As the Court has noted,

> This reply makes little sense in reference to Petitioner's specific request for information. The prison is willing to release records to a lawyer, but not to a federal judge. The prison requires the prisoner to have a lawyer to request the records, even though the prisoner said that the records were

needed for the purpose of qualifying for appointment of a
lawyer.

(*Id.*) Other replies to Petitioner's requests were nonresponsive.

Therefore, on October 9, 2015—approximately eleven months after its Order on

Petitioner's motion for appointment of counsel—the Court instructed IDOC to provide

the Court with certain information for purposes of determining "whether a lawyer is

needed to help Petitioner prepare her habeas corpus petition, or whether Petitioner can

prepare it herself through IDOC access-to-courts procedures." (*Id.* at 4.) The Court noted

that the "IDOC process (if it can be called a process) has wasted several hours of

Petitioner's time, several hours of the Court's time, and many months of litigation time."

(*Id.*)

Counsel for the IDOC responded to the Order and certified that the sealed medical

records provided to the Court were sent to Petitioner on November 5, 2015. Nonetheless,

Petitioner did not renew her request for appointment of counsel based on her medical

records and, in fact, took no further action in this case at all for nearly five months.

With the assistance of a law school pro bono program Petitioner filed her Petition

in this Court, at the earliest, on April 1, 2016. (Dkt. 1 (consol. case).) *See Houston v.

Lack*, 487 U.S. 266, 270-72 (1988) (mailbox rule); Habeas Rule 3(d) (same). Because

Petitioner did not include the instant case number in her Petition or otherwise call the

Clerk's attention to the fact that the Petition should be filed in the instant case, the Clerk

of Court opened a new habeas case: Case No. 4:16-cv-00167-CWD, *Murphy v. Gentry*.

When this was discovered, Judge Dale reassigned the new case to the undersigned judge

and the two cases were consolidated. (Dkt. 12.) Petitioner later obtained counsel. (Dkt. 13.)

In her habeas corpus petition, Petitioner asserts the following claims: (1) ineffective assistance of counsel for failing to object to certain testimony; (2) ineffective assistance of counsel for failing to retain a forensic pathologist; (3) ineffective assistance of counsel for failing to investigate phone records; (4) violation of due process based on the Idaho Supreme Court's refusal to augment the appellate record during post-conviction proceedings; and (5) ineffective assistance of counsel for failing to retain an expert in gunshot residue. (Pet., Dkt. 1 (consol. case), at 6-10; Initial Review Order, Dkt. 14 (lead case), at 2.)

The Court reviewed the Petition and allowed Petitioner to proceed, but it noted that Claim 4 was subject to dismissal because claims of error during state post-conviction proceedings are not cognizable on federal habeas review. (Dkt. 14 at 13-14.) *See Franzen v. Brinkman*, 877 F.2d 26, 26 (9th Cir. 1989) (per curiam). The Court expressed no opinion as to the timeliness of the Petition.

## DISCUSSION

The Rules Governing § 2254 Cases ("Habeas Rules") authorize the Court to summarily dismiss a petition for writ of habeas corpus when "it plainly appears from the face of the petition and any attached exhibits," as well as those records subject to judicial notice, "that the petitioner is not entitled to relief in the district court." Habeas Rule 4; *see* Fed. R. Evid. 201; *Dawson*, 451 F.3d at 551 n.1. Where appropriate, a respondent may

file a motion for summary dismissal, rather than an answer. *White v. Lewis*, 874 F.2d 599, 602 (9th Cir. 1989).

Respondent argues that Petitioner's claims are barred by the one-year statute of limitations. The Court agrees. Because Petitioner (1) is entitled to statutory tolling of only part of the statute of limitations period, (2) is not entitled to equitable tolling, and (3) has not made a colorable showing of actual innocence, the Court will dismiss the Petition with prejudice as untimely.

## 1.    Standards of Law

The Antiterrorism and Effective Death Penalty Act ("AEDPA") requires a petitioner to seek federal habeas corpus relief within one year from "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review."[1] 28 U.S.C. § 2244(d)(1)(A). One year in this context actually means 366 days—for example, from January 1, 2010, to January 1, 2011. *See Patterson v. Stewart*, 251 F.3d 1243, 1246 (9th Cir. 2001) (applying Federal Rule of Civil

---

[1]    Several other triggering events for the statute of limitations exist—but are less common—and are set forth in subsections 2244(d)(1)(B)-(D):

   (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;

   (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

   (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2244(d)(1).

**MEMORANDUM DECISION AND ORDER - 11**

Procedure 6(a) to AEDPA, where the calculation excludes the day the conviction became final). Thus, the first step in a statute of limitations analysis is determining the date on which the petitioner's conviction became final.

Under 28 U.S.C. § 2244(d)(1)(A), the date of "finality" that begins the one-year time period is marked as follows, depending on how far a petitioner pursues her case:

| Action Taken | Finality Occurs |
|---|---|
| No appeal is filed after state district court order or judgment | 42 days later, *see* Idaho Appellate Rule 14 |
| Appeal is filed and Idaho Court of Appeals issues a decision, but no petition for review is filed with the Idaho Supreme Court | 21 days later, *see* Idaho Appellate Rule 118 |
| Appeal is filed and Idaho Supreme Court issues a decision or denies a petition for review of an Idaho Court of Appeals decision, and Petitioner does not file a petition for writ of certiorari with the United States Supreme Court | 90 days later, *see* United States Supreme Court Rule 13 |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, and the petition is denied | Date of denial |
| After Idaho Supreme Court issues a decision or denies a petition for review, Petitioner files a petition for writ of certiorari to the United States Supreme Court, the petition is granted, and the United States Supreme Court issues a decision | Date of decision |

In each of the above instances, if the petitioner stops pursuing the case and does not take the next step within the time specified, "finality" is measured from entry of final judgment or order, not from a remittitur or mandate, which are mere formalities.

*Gonzales v. Thaler*, 565 U.S. 134, 150-51 (2012); *Wixom v. Washington*, 264 F.3d 894, 898 n.4 (9th Cir. 2001).

The one-year statute of limitations can be tolled (or suspended) under certain circumstances. AEDPA provides for tolling for all of "[t]he time during which a properly filed application for State post-conviction or other collateral review . . . is pending." 28 U.S.C. § 2244(d)(2). Thus, to the extent that a petitioner properly filed an application for post-conviction relief or other collateral challenge in state court, the one-year federal limitations period stops running on the filing date of the state court action and resumes when the action is completed. To warrant tolling, the collateral relief application must be "properly filed," meaning that it conforms to state rules governing conditions to filing, including filing deadlines. *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005).

The time before a petitioner files an initial application for collateral review in state court, however, does not toll the statute of limitation. *Nino v. Galaza*, 183 F.3d 1003, 1006 (9th Cir. 1999) ("AEDPA's statute of limitations is not tolled from the time a final decision is issued on direct state appeal and the time the first state collateral challenge is filed because there is no case 'pending' during that interval."), *abrogated on other grounds as stated in Nedds v. Calderon*, 678 F.3d 777, 781 (9th Cir. 2012). In addition, AEDPA "does not permit the reinitiation of the [federal] limitations period that has ended before the state petition was filed." *Ferguson v. Palmateer*, 321 F.3d 820, 822 (9th Cir. 2003).

If, after applying statutory tolling, a habeas petition is deemed untimely, a federal court can still hear the merits of the claims if the petitioner can establish that equitable tolling should be applied to toll the remaining time period. *See Jorss v. Gomez*, 311 F.3d 1189, 1192 (9th Cir. 2002) ("[A] court must first determine whether a petition was untimely under the statute itself before it considers whether equitable tolling should be applied."). The limitations period may be equitably tolled under exceptional circumstances. "[A] petitioner is entitled to equitable tolling only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted).

A petitioner requesting equitable tolling must show "reasonable diligence, not "maximum feasible diligence," *id.* at 653, and "whether a petitioner acted with reasonable diligence is a fact-specific inquiry," *Fue v. Biter*, 842 F.3d 650, 654 (9th Cir. 2016). "Ordinarily, a petitioner must act with reasonable diligence both before and after receiving delayed notice that the state denied his habeas petition." *Id.* at 656.

In addition, the statute of limitations is subject to an actual innocence exception. A petitioner who satisfies the actual innocence gateway standard may have her otherwise time-barred claims heard on the merits. *McQuiggin v. Perkins*, 133 S. Ct. 1924, 1931-32 (2013); *Lee v. Lampert*, 653 F.3d 929, 937 (9th Cir. 2011) (en banc). Actual innocence in this context means "factual innocence, not mere legal insufficiency." *Bousley v. United States*, 523 U.S. 614, 624 (1998). Although "habeas petitioners who assert convincing

actual-innocence claims [need not] prove diligence to cross a federal court's threshold," a

court "'may consider how the timing of the submission and the likely credibility of a

petitioner's affiants bear on the probable reliability of evidence of actual innocence.'"

*McQuiggin*, 133 S. Ct. at 1935 (quoting *Schlup v. Delo*, 513 U.S. 298, 332 (1995))

(alterations omitted).

**2.      The Petition Is Barred by the Statute of Limitations**

> *A.      The One-Year Limitations Period Began to Run on June 17, 2003*

Because Petitioner did not file a petition for certiorari with the United States

Supreme Court, her conviction became final on June 17, 2003. That date was 90 days

after the Idaho Supreme Court denied review in Petitioner's direct appeal (on March 19,

2003). *See* U.S.S.Ct. Rule 13. Petitioner's conviction becoming final on that date

triggered the start of the statute of limitations period. *See* 28 U.S.C. § 2244(d)(1)(A).

Petitioner asserts that the statute of limitations did not actually begin running on

June 17, 2003, when her conviction became final. (Dkt. 28 at 20-21.) She cites 28 U.S.C.

§ 2244(d)(1)(B), which states that, in the case of a state-created impediment to filing the

petition, the limitations period does not commence until the removal of that impediment.

The state-created impediment subsection of § 2244(d) applies "*only if* the impediment

violates the Constitution or federal law." *Holland*, 560 U.S. at 665. Further, "[t]o obtain

relief under § 2244(d)(1)(B), the petitioner must show a causal connection between the

unlawful impediment and his failure to file a timely habeas petition." *Bryant v. Arizona

Atty. Gen.*, 499 F.3d 1056, 1060 (9th Cir. 2007). Petitioner appears to claim that the

actions of prison staff in failing to provide her with the medical records necessary to support her motion for appointment of counsel—which the Court's November 3, 2014 Order required Petitioner to submit—in a manner appropriate for a visually-impaired inmate constituted such a state-created impediment. (Dkt. 28 at 20-21.)

This argument is unpersuasive. First—as explained more fully below—although the actions or inaction of prison staff with respect to Petitioner's visual impairment and access-to-courts policy was inappropriate, it does not rise to the level of a constitutional violation or other violation of federal law. Second, Petitioner was able to file her motion for appointment of counsel and her in forma pauperis application within the statute of limitations period. Obviously, there was no state-created impediment to those filings, and Petitioner could have filed a petition within that same period.[2] Thus, there is no causal link between the alleged impediment and the untimely filing. *See Bryant*, 499 F.3d at 1060.

For the above reasons, the limitations period began to run on June 17, 2003, when Petitioner's conviction became final.

### B.     With Statutory Tolling, the Petition Was Due on October 10, 2014

As set forth above, AEDPA's one-year limitations period is tolled for all of the time "during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Petitioner filed her initial state post-conviction petition on March 8, 2004.

---

[2]     Petitioner's argument that the Court's orders misled her and caused her to file an untimely petition will be addressed below in the context of equitable tolling.

Therefore, 265 days of the limitations period had already passed by the time Petitioner filed her initial post-conviction petition, as there are 265 days between June 17, 2003 and March 8, 2004. *See Nino*, 183 F.3d at 1006.

The statute stopped running on March 8, 2004, with the filing of Petitioner's initial post-conviction petition. The initial post-conviction proceedings continued until August 10, 2009, when the Idaho Supreme Court issued its remittitur. *See Allen v. Lewis*, 295 F.3d 1046, 1046 (9th Cir. 2002) (en banc) (reaffirming *Bunney v. Mitchell*, 262 F.3d 973 (9th Cir. 2001) (per curiam) (state law governs when a petitioner's state court post-conviction action concludes); *Jakoski v. State*, 32 P.3d 672, 679 (Idaho Ct. App. 2001) (Idaho appellate decisions are final when remittitur is issued). The limitations period ordinarily would have begun running again on that date. However, because Petitioner filed her successive post-conviction petition while the initial post-conviction appeal was still pending, AEDPA's statute of limitations remained tolled until July 1, 2014, when the Idaho Supreme Court issued the remittitur in Petitioner's successive post-conviction appeal.[3]

When the statute of limitations once again began to run following the completion of Petitioner's successive post-conviction proceedings, she had 101 days of the statutory

---

[3]     Unlike the 90-day certiorari period following the decision of the last state court to review a direct appeal from a criminal conviction, the 90-day certiorari period is *not* tolled following the last state court's decision on a petitioner's state post-conviction petition. *Lawrence v. Florida*, 549 U.S. 327, 331 (2007) ("State review ends when the state courts have finally resolved an application for state postconviction relief. After the State's highest court has issued its mandate or denied review, no other state avenues for relief remain open. And an application for state postconviction review no longer exists. All that remains is a separate certiorari petition pending before a *federal* court. The application for state postconviction review is therefore not 'pending' after the state court's postconviction review is complete, and § 2244(d)(2) does not toll the 1-year limitations period during the pendency of a petition for certiorari.").

**MEMORANDUM DECISION AND ORDER - 17**

period remaining in which to file her federal petition (366 days minus 265 days).

Therefore, Petitioner's federal Petition was due in this Court on or before October 10, 2014 (101 days after July 1, 2014).

Petitioner argues that her Petition should be deemed filed as of August 1, 2014, when she filed her motion for appointment of counsel and in forma pauperis application. (Dkt. 28 at 15-16.) However, it is well-established that a request for counsel or other preliminary filings in federal court do not stop the running the statute of limitations of § 2244(d)(1). *Isley*, 383 F.3d at 1055 ("Under federal law, the filing of . . . a request [for appointment of counsel] does not toll the statute of limitations, because such a request is not a petition for relief from a judgment of conviction."); *Garceau*, 538 U.S. at 210 (holding that a motion for appointment of counsel and stay of execution did not render a federal petition pending or filed for purposes of determining whether the petition was subject to AEDPA's amendments, which do not apply to cases pending as of AEDPA's effective date). Indeed, Petitioner would have been aware of this important information because it was set out in the Court's November 3, 2014 Order, in which Petitioner was also warned that, "as soon as possible," she should file a simple petition, on the standard form available at the prison, and that any such petition could be amended at a later date. (Dkt. 6.) Petitioner's argument on this point is contrary to law.

Petitioner did not file her Petition until April 1, 2016. Therefore, even with statutory tolling, the Petition was filed nearly 18 months too late.

### C. Petitioner Is Not Entitled to Equitable Tolling Sufficient to Render the Petition Timely

As noted above, equitable tolling will apply if (1) the petitioner has pursued her rights diligently and (2) extraordinary circumstances stood in her way and prevented a timely filing. *Holland*, 560 U.S. at 649. "[T]he threshold necessary to trigger equitable tolling under AEDPA is very high, lest the exceptions swallow the rule." *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002) (internal quotation marks and alteration omitted).

As to the diligence issue, the Supreme Court has held that a petitioner who "waited years, without any valid justification" to bring his post-conviction claims in state court, and then waited "five more months after his [post-conviction] proceedings became final before deciding to seek relief in federal court," had not acted diligently in pursuing his rights. *Pace*, 544 U.S. at 419. As to the second prong of equitable tolling, extraordinary circumstances are not, alone, sufficient; rather, the petitioner must show "that the extraordinary circumstances were the *cause* of [the] untimeliness." *Lakey v. Hickman*, 633 F.3d 782, 786 (9th Cir. 2011) (emphasis added).

Petitioner asserts that extraordinary circumstances justify the application of equitable tolling in this case: her visual impairment, the IDOC's obstreperous actions when she was attempting to obtain her medical records to support a renewal or her motion for appointment of counsel, and the Court's previous Orders.[4]

---

[4] Petitioner also complains that she did not know of the statute of limitations and that none of her attorneys ever informed her about it. However, mere "oversight, miscalculation or negligence," either on the part of the petitioner or the petitioner's attorney, are not extraordinary circumstances for purposes of

With respect to Petitioner's visual impairment, Petitioner's own submissions reveal that, although she does suffer from retinal dystrophy and words are often blurry on the page, that impairment—at least around the time Petitioner submitted her preliminary filings and should have filed her petition—was not so severe as to cause the untimely filing of her petition. Petitioner acknowledges that a July 2, 2014 evaluation by an optometrist showed that Petitioner's vision was "stable with glasses"—with her corrective lenses, her right eye was measured at 20/25 and her left eye at 20/200. (Dkt. 28 at 23.) On October 21, 2014 (eleven days after her petition was due), another optometrist noted that Petitioner's vision was not so impaired that she needed audio books instead of written books. (*Id*.)

A year later, in October 2015, Petitioner's vision was measured as 20/40 in the right eye and 20/100 in the left, with her then-current correction. (*Id*. at 24.) There is simply no evidence that Petitioner's visual impairment was severe enough as to inhibit her ability to read and write to the point that it prevented her from filing a timely petition. *See Lacey*, 633 F.3d at 786. That is, Petitioner could have filed her petition prior to the expiration of the statute of limitations. Illustrative of that capability, Petitioner was able to prepare and submit to the Court a motion for appointment of counsel and in forma pauperis application in August 2014; she also filed a typed letter with the Court in

---

equitable tolling. *Waldron-Ramsey v. Pacholke*, 556 F.3d 1008, 1011 (9th Cir. 2009) (internal quotation marks omitted); *See also Rasberry v. Garcia*, 448 F.3d 1150, 1154 (9th Cir. 2006) ("[A] pro se petitioner's lack of legal sophistication is not, by itself, an extraordinary circumstance warranting equitable tolling."); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) ("[M]iscalculation of the limitations period by [petitioner's] counsel and his negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling.").

January 2015. All of these filings support the Court's conclusion that Petitioner's visual impairment did not prevent her from exercising her right of access to the courts.

Petitioner also asserts that prison officials' actions in denying her access to her medical records, prior to the Court's October 2015 Order, warrant the application of equitable tolling. Petitioner is correct that officials did not respond reasonably to her requests until they were ordered to provide her with her medical records. Further, the Chief of Prisons has informed the Court that, during the relevant time period, the IDOC inexplicably did not have a policy regarding access-to-courts assistance for visually-impaired inmates. (Dkt. 10-2 at ¶ 4.)

The Court agrees that the IDOC's initial failure to help Petitioner obtain her medical records or other access-to-courts assistance was improper. However, like Petitioner's visual impairment, there is no evidence that this failure actually "prevented timely filing" of the Petition. *Holland*, 560 U.S. at 649. As previously noted, before filing her Petition, Petitioner was able to submit a motion for appointment of counsel, an in forma pauperis application, and a letter to the Court—either because she had the help of another inmate or because she was able to overcome her visual limitations by using her corrective lenses. The record does not indicate that a simple petition, drafted on the form available at the prison, would have been substantially more difficult for Petitioner to prepare than her preliminary filings, even considering her vision problems. Thus, the prison officials' actions, unreasonable as they were, did not *cause* Petitioner to file a late petition.

Petitioner also argues that the Court's actions in this case misled her into believing that she did not need to file a petition immediately. As is appropriate, equitable tolling is available in cases where a court gives inaccurate information that affirmatively misleads a petitioner. *Ford v. Pliler*, 590 F.3d 782, 786 (9th Cir. 2009).

Petitioner is correct that the Order of Conditional Filing—which is a form Order issued in every case where an in forma pauperis application is filed or where the plaintiff or petitioner is a prisoner—stated that Petitioner "must wait until the Court has authorized [her] to proceed with [her] case in an initial review order." (Dkt. 4.) But that information was accurate at that time, as Habeas Rule 4 requires a court to review habeas petitions upon receipt to determine if they are subject to dismissal. Because the information was accurate, equitable tolling does not apply.

In addition, even if the information in the Order of Conditional Filing was not accurate, Petitioner has not shown that the Court affirmatively misled her because—in its November 3, 2014 Order—the Court gave her specific information in its later Order advising her that the statute of limitations was not tolled by the filing of a motion for appointment of counsel. The Court expressly advised Petitioner to file her habeas petition "*as soon as possible.*" (Dkt. 6 at 2 (emphasis added).) Even if Petitioner contends that she was misled somehow by the Order of Conditional Filing, after receiving the subsequent November 3, 2014 Order, it would have been clear to Petitioner that the statute of limitations was running and would continue to do so *until she filed her petition*. Given the Court's explicit instructions to file a petition "as soon as possible," if Petitioner wanted to

preserve the timeliness of that petition any reliance on the Court's earlier Order of Conditional Filing was not a result of any affirmative misleading by the Court. *See Ford*, 590 F.3d at 786; *see also Williamson v. Hubbard*, 27 F. App'x 733, 736 (9th Cir. 2001) (unpublished) ("Although [petitioner] contends that the language [in the court's order] could have been made more clear for a pro se petitioner, it was sufficient to put him on notice that he faced a one year statute of limitations and that, theoretically, his time may have begun to run when his conviction became final . . . .").

Petitioner also claims that the statute of limitations cannot be deemed to have expired on October 10, 2014, because at that point the Court had not yet issued its Order on Petitioner's motion for appointment of counsel. Petitioner appears to argue that the Order—issued on November 3, 2014, after the statute had already run—implied that if Petitioner filed a petition "as soon as possible," any such petition would be filed within the statute of limitations period and would, therefore, be timely. (Dkt. 28 at 17.)

However, Petitioner was never told that her eventual petition—whenever she filed it—would be timely. The Court could not possibly have done so, given that Petitioner had not actually filed a petition. *See Pliler*, 542 U.S. at 232 (holding that district judges are not required to warn petitioners that the statute of limitations might expire, in part because any such "calculations depend upon information contained in documents that do not necessarily accompany the petitions"). Without any information about the crime, the date of conviction, and the date of the filing and completion of Petitioner's several state appellate and post-conviction proceedings, the Court could not, and did not, opine as to

timeliness. The Court did what it properly could to help Petitioner—it advised Petitioner that timeliness was an issue that she needed to consider. The Court's statement that the statute of limitations might be an issue was accurate. The Court's issuance of its November 3, 2014 Order after the expiration of the statute of limitations did not affirmatively mislead Petitioner and is not an extraordinary circumstance justifying the application of equitable tolling.[5]

Finally, even if the Court applied equitable tolling to all of the time between her initial filings and the Court's Order requiring IDOC to provide her with the medical records she requested, it would not change the fact that—after receiving all of those documents—Petitioner filed nothing in this action for nearly five months.

If Petitioner had filed her Petition one month, instead of five months, after the Court's October 9, 2015 Order, she would be in a much better position. However, she has not adequately explained the nearly five-month delay in filing once she received the materials she had been seeking. After the allegedly extraordinary circumstances were removed, there was no reason why Petitioner could not file a petition within a shorter period of time. For this same reason, Petitioner has failed to demonstrate that she acted diligently both "before and after" the allegedly extraordinary circumstances were

---

[5]    Petitioner also relies on the fact that three months passed after Petitioner filed her motion for the Court to issue its November 3, 2014 Order. However, three months is not an inordinately long time for the Court to have taken before it issued its Order on Petitioner's motion for appointment of counsel. This Court has a heavy caseload, has limited judicial resources, and gets to each case as soon as it can. Given that the Court never gave Petitioner any indication that she could take as long as she wished to file her petition—in fact, the Court told her precisely the opposite—the Court's three-month "delay" once she filed her motion for counsel does not constitute the type of extraordinary circumstance necessary for equitable tolling to apply.

**MEMORANDUM DECISION AND ORDER - 24**

resolved. *See Fue*, 842 F.3d 654; *see also Pace*, 544 U.S. at 419 (five-month delay in filing after removal of the extraordinary circumstance showed lack of diligence).

Therefore, the Court concludes that equitable tolling does not apply to render the Petition timely.

### D. Petitioner Has Not Established Actual Innocence to Excuse the Untimely Filing

Petitioner has stated that her attorney should have presented an alibi defense (Dkt. 28 at 26-27). Therefore, the Court will consider the actual innocence exception as well. To take advantage of the actual innocence gateway exception to the statute of limitations, a petitioner must demonstrate "that it is more likely than not that no reasonable juror would have found [the] petitioner guilty beyond a reasonable doubt." *Schlup*, 513 U.S. at 327. Stated another way, a petitioner must show that *every* reasonable juror would vote to acquit.

This is an extremely stringent standard, permitting review "only in the 'extraordinary' case." *House v. Bell*, 547 U.S. 518, 538 (2006). A court considering whether a petitioner has established actual innocence must consider "all the evidence, old and new, incriminating and exculpatory, admissible at trial or not." *Lee v. Lampert*, 653 F.3d 929, 938 (9th Cir. 2011) (en banc) (internal quotation marks omitted). The actual innocence analysis "does not turn on discrete findings regarding disputed points of fact, and '[i]t is not the district court's independent judgment as to whether reasonable doubt exists that the standard addresses.'" *House v. Bell*, 547 U.S. 518, 539-40 (2006) (quoting *Schlup*, 513 U.S. at 329 (alteration in original)). Rather, the court must "make a

probabilistic determination about what reasonable, properly instructed jurors would do."
*Schlup*, 513 U.S. at 329.

Here, Petitioner has not offered any credible evidence of actual innocence.
Therefore, her Petition is time-barred.

### 3.    Claim 4 Is Noncognizable

Claim 4, which asserts error during Petitioner's successive post-conviction appeal,
must be dismissed for the additional reason that it is not cognizable in this federal habeas
action. *See Franzen*, 877 F.2d at 26 ("[A] petition alleging errors in the state post-
conviction review process is not addressable through habeas corpus proceedings.").

## CONCLUSION

For the foregoing reasons, Petitioner's claims are untimely and Claim 4 is
noncognizable. Therefore, the Court must dismiss this case.

## CERTIFICATE OF APPEALABILITY

In the event Petitioner files a notice of appeal from the final judgment in this case,
the Court now considers whether to grant a certificate of appealability ("COA"), which is
required before a habeas corpus appeal can proceed. 28 U.S.C. § 2253(c)(1)(A); *Miller-El
v. Cockrell*, 537 U.S. 322, 336 (2003); Habeas Rule 11(a).

A COA may issue when a petitioner has made "a substantial showing of the denial
of a constitutional right." 28 U.S.C. § 2253(c)(2). The Supreme Court has explained that,
under this standard, a petitioner must show "that reasonable jurists could debate whether
(or, for that matter, agree that) the petition should have been resolved in a different
manner or that the issues presented were adequate to deserve encouragement to proceed

further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (internal citation and punctuation omitted).

The Court has concluded that the question of whether equitable tolling applies to render the Petition timely is "adequate to deserve encouragement to proceed further." *Id.* Therefore, a COA will be granted with respect to this discrete issue.

## ORDER

**IT IS ORDERED:**

1.  Respondents' Motion for Extension of Time (Dkt. 29) is GRANTED.

2.  Respondents' Motion to File Oversize Brief (Dkt. 31) is GRANTED.

3.  Respondents' Motion for Summary Dismissal (Dkt. 21) is GRANTED, and the Petition is DISMISSED with prejudice.

4.  The Court issues a COA on the issue of whether Petitioner is entitled to equitable tolling sufficient to excuse Petitioner's failure to file a timely habeas corpus petition under 28 U.S.C. § 2244(d). The Court denies a COA with respect to its determination that Claim 4 is noncognizable.

DATED:  **September 28, 2017**

_____
Honorable Ronald E. Bush
United States Magistrate Judge